### C. F. SIMMONS MEDICINE CO. et al. v. SIMMONS.

(Circuit Court, E. D. Arkansas, E. D.    May 24, 1897.)

1. CONTRACTS IN RESTRAINT OF TRADE—SECRET PROCESSES.
   An agreement, made by one who enters the employ of the manufacturer of a medicine compounded by a secret process, not to make or sell any of the medicine, or reveal the secret of its composition, is not in restraint of trade, and will be enforced in equity by injunction.

2. SALE OF RIGHT IN SECRET COMPOUND—DISCLOSURE BY SELLER—INJUNCTION.
   Equity will not permit one who has sold for a valuable consideration the absolute and exclusive property in a medicine compounded by a secret process to reveal such secret to a third person, either by himself, or through a member of his family, and will restrain by injunction the use of a secret so revealed.

3. UNFAIR COMPETITION IN BUSINESS—IMITATION OF WRAPPERS, ETC.
   Defendant manufactured and sold a medicine to which he gave a name similar to the name of complainant's medicine, including the name of the inventor; he placed on the wrappers of his medicine a picture of a bust, and an autograph signature, complainant's medicine having long been known among an ignorant class of purchasers by similar signs; he issued directions which were almost a literal copy of the complainant's; and he published a card in which he described himself as the son and successor of the inventor of complainant's medicine. *Held*, that defendant was guilty of unfair competition.

This is an action to enjoin the defendant from compounding, making, or selling any liver medicine called "Simmons' Liver Medicine,"

and on which the name of Simmons is used, or disclosing, for making and compounding such medicine, the knowledge which was imparted to him by complainants while in their employ, and to restrain him from selling medicines put up by him, and called "Simmons' Stomach Compound."

The bill alleges: That the complainant corporation is now, and for many years has been, the owner of a recipe for liver medicine, and engaged in manufacturing such medicine, which said medicine, for over 50 years, and before it became the property of the complainant, had a world-wide reputation. That it became known to the public as, and was called, "M. A. Simmons' Liver Medicine," "Dr. M. A. Simmons' Liver Medicine," "Liver Medicine by M. A. Simmons," and "Dr. Simmons' Liver Medicine." That the secret recipe for its preparation was originally owned by Dr. M. A. Simmons, of Iuka, Miss., who sold it to Simmons & Hayden in 1879 for $30,000, and of which firm the complainant corporation is the successor in title and right. That by said purchase the corporation became the owner of the secret recipe for making the liver medicine, trade-mark, name, etc. That ever since 1850 these medicines were distinguished from others by a bust picture, the name of M. A. Simmons, and his autograph signature. That in 1886 the defendant, while in complainants' employ, was intrusted with the secret recipe for the making of said medicine, in order to enable him to assist in the preparation of the same, he entering into a certain contract with complainants never at any time to communicate the knowledge he had so received and would thereafter receive, except by the direct order and consent of the complainant C. F. Simmons; that he would not thereafter, directly or indirectly, for himself, or for others than the complainants, or heirs and assigns, make or sell any of the medicines made by complainants, nor would he ever make or sell any liver medicine on which he would use his name, or the name "M. A. Simmons," except in certain states named in the contract, and in those states only for local consumption. When this contract was made the defendant was not quite 21 years of age, but six months later, in February, 1887, after he had attained his majority, this contract was, in writing, ratified and confirmed by the defendant. The plaintiffs fully complied with their part of the contract, but the defendant during the fall of 1895 began to manufacture, according to the secret process imparted to him by complainants, a liver medicine which he calls "Simmons' Stomach Compound," and has entered into competition with complainants in making and selling the same as a liver medicine, which he was doing in the state of Arkansas,—a state not excepted from the provisions of the contract. The bill then recites a full history of the medicine from 1840 to the present time, and shows that the complainant corporation is the sole owner thereof. The bill further charges an infringement of complainant's trade-mark, ungenerously and piratically, against equity and good conscience, dressing his packages of medicine so as to be sold as and for those of complainant, the bill setting out specifically all the facts in this connection; also charging that the defendant copied the directions for the use of complainant's medicine, as printed on its packages, and printed them on those prepared by him; that he also bodily copied the trade circular of complainant, which he has been using and sending out with his own medicine. The bill was filed a short time after the defendant commenced putting his medicine on the market. The answer denies that complainants own the secret recipe for the making of this medicine, but claims that it was an heirloom of the Simmons family, handed down from generation to generation; that he knew it from earliest childhood, it being no secret between the members of the family; that when he entered complainants' employ he supposed that they were using the family recipe as it was known to him, but he found their process was not in exact accordance with the original family recipe. Denies that the medicine he makes is according to the recipe confided to him by complainants while in their employ, but it is a formula of his own, based upon the original recipe of the Simmons family, acquired by him from family tradition and from his mother. Admits that the exact process and manner of manufacturing used by complainants was unknown to him until imparted to him while in their employ, but denies using that process. Admits the execution of the contract in the bill set out, but states that he was

an infant then, and that he signed it without scrutiny and deliberation; that the ratification of the contract by him, although made when of age, was shortly after he attained his majority, while inexperienced in business, and having full confidence in complainant C. F. Simmons, who is his older brother; that the contract is void because founded on no sufficient consideration, as being in restraint of trade, and is not the contract that he had been advised it was at the time he executed it, and at the time he ratified it. Denies that his packages are put up so as to closely resemble those of complainant, and avers that all medicines for the stomach, liver, and bowels, having for their basis the original Simmons recipe, are necessarily so. Denies that his packages are addressed so as to deceive an ordinary observer, although he used his bust picture and autograph signature thereon. The testimony on both sides is very voluminous, covering several thousand pages of typewritten matter. As the opinion states the facts found by the court, it is unnecessary to set 'any of the evidence out in this statement.

Carroll, Chalmers & McKellar and Stevenson & Trieber, for complainants.

John J. & E. C. Hornor, Sanders & Fink, and Rose, Hemingway & Rose, for defendant.

WILLIAMS, District Judge (after stating the facts as above). The able arguments of counsel on both sides, and the elaborate briefs filed by them, have been of invaluable assistance to the court in determining this cause. The pleadings of both parties are commendable for their clearness and brevity, and the authorities bearing on the points involved, furnished by counsel, have greatly aided the court, and lightened its labor.

The bill seeks relief upon two main grounds: First, complainants rely upon the contract; and, second, upon the general rules of equity courts governing cases of this kind in the absence of any contract. So far as the contract is concerned, complainants complain that the defendant has violated it in the following particulars: First, in making a liver medicine which he calls "Simmons' Liver Compound," and selling it in competition with plaintiffs' liver medicine, using plaintiffs' secret process for that purpose; second, in making use of the knowledge imparted to him, in trust and confidence, in the manufacturing and compounding of the said medicine; third, in making and selling a liver medicine, using his name thereon, within the territory prohibited by the contract.

As to the invalidity of the contract, in its being in restraint of trade, the various decisions of the supreme court of the United States are conclusive that such a contract, entered into under the circumstances under which this contract was made, is not void as being in restraint of trade. As was remarked in Gibbs v. Consolidated Gas Co., 130 U. S. 396, 9 Sup. Ct. 553:

"The decision in Mitchel v. Reynolds, 1 P. Wms. 181, is the foundation of the rule in relation to the validity of contracts in restraint of trade: but, as it was made under a condition of things and a state of society different from those which now prevail, the rule laid down is not regarded as inflexible, and has been considerably modified. Public welfare is first considered, and if it be not, involved, and the restraint upon one party is not greater than the protection to the other requires, the contract may be sustained. The question is whether, under the particular circumstances of the case, and the nature of the particular contract, as involved in it, the contract is or is not unreasonable. Oakes v. Water Co., 143 N. Y. 430, 38 N. E. 461; Match Co. v. Roeber, 106

N. Y. 473, 13 N. E. 419; Central Transp. Co. v. Pullman's Palace-Car Co., 139 U. S. 24, 11 Sup. Ct. 478; Peabody v. Norfolk, 98 Mass. 452."

The chief contention over the contract is as to the understanding of the contracting parties at the time of its execution and ratification. The defendant claims that, when he signed it, his understanding, to use his own words, was:

"That his brother asked him if he would sign the contract that he would not make any of the medicine, and would not give the secrets of the medicine away. I told him I would sign a contract of that kind. A few days after that he told me he had a contract ready, and read it to me just about as I have stated it here; that I would neither make any of the medicines made by the Simmons Medicine Company, nor sell nor give away their formulæ to anybody, and I signed it thinking it was the contract."

There is therefore no room for doubt as to the first two subjects of the contract. Both the contracting parties understood it thus far. But having entered the service of complainants, and having had imparted to him their secrets, defendant was, in equity and good conscience, obliged to preserve them as sacredly as his own, and this as well without a contract as with it. The leading English case on that subject, and which has been universally followed by the courts of this country, including the supreme court of the United States, is Morison v. Moat, 9 Hare, 241. In that case, Vice Chancellor Turner, in delivering his opinion, said, among other things:

"Upon the whole, therefore, I am of the opinion that the plaintiffs have made out their case for an injunction. I think, however, the injunction cannot go to the extent which is asked for by the notice of motion. It should, I think, go to the extent of restraining the defendant from selling, under the title or designation of 'Morrison's Universal Medicine,' or 'Morrison's Vegetable Universal Medicine,' any medicine made or manufactured by him; proceeding, to this extent, not upon the mere use of the name, but because this is clearly the mode in which defendant is availing himself of the breach of favor and contract; and, upon the authorities, I think it should also go to the extent of restraining the defendant from making or compounding any medicines according to the secret, and from in any manner using the secret of compounding the medicine."

And in another part of this decision it is said:

"There is no doubt whatever that where a party who has a secret in trade employs persons under contract, express or implied, or under duty, express or implied, those persons cannot gain knowledge of that secret, and set it up against their employer."

As to the third part of that contract, as before set forth, although it has been ably presented by both parties, I do not deem it necessary, in determining this case, to pass upon it. It is a well-settled rule of pleading, and the application of evidence thereto, prevailing in the courts of the United States, that "in equity the proofs and allegations must correspond." "The examination of the case by the court is confined to the issues made by the pleadings. Proofs without the requisite allegations are as unavailing as such allegations would be without the requisite proofs to support them." Rubber Co. v. Goodyear, 9 Wall. 793; Boone v. Chiles, 10 Pet. 177. The plaintiffs, in their bill, complain that the defendant is making a liver medicine called "Stomach Compound," using its trade secret for that purpose; but there is neither allegation nor proof to sustain the theory that defendant is making any other or different medicine in which the

trade secret is used, and upon which the defendant is using his name, or the name of M. A. Simmons. The entire complaint is based on the charge of the manufacture of a medicine, in which use is made of the trade secret and the unfair competition. The court cannot, even if so inclined, extend the relief beyond the scope of the bill and proof. In this view of the case, it can make no practical difference whether the relief be granted under the terms 'of the contract, so far as it is shown and admitted by defendant, as both parties understood it, or whether it be given under the general equity powers of the court. From the evidence the court is satisfied that the medicine compounded by the defendant, and sold as "Simmons' Stomach Compound," is practically the same as that of complainants, and based solely upon the recipe confided to him while in complainants' employ. The testimony tends to show that, these medicines being vegetable compounds, it is not possible to closely analyze them, and thus ascertain by scientific tests what the ingredients are, and that the only tests by which they can be compared are appearance, taste, and smell. On that point the testimony is conclusive that, while there is some slight difference in the appearance of the medicines, they are exactly alike in taste and smell. Defendant, in his answer, is silent as to his knowledge of the original heirloom of the Simmons family, although he denied that the recipe was a secret in the family, but, on the contrary, averred that it was within the knowledge of the Simmons family for generations, and handed down by the ancestors of that family from generation to generation; that whatever knowledge he had of the medicine, or the manner of its compounding, he acquired from his father and mother while the medicine was being made in the laboratory of his father at Iuka, Miss. This allegation is not sustained by the testimony. The father, Dr. M. A. Simmons, testifies:

"To my knowledge, no one knew it [the secret recipe] except myself and wife. It was my exclusive property. I always mixed it in a private mixing room, never allowing any one present except my wife, and guarded the secret, as to property and processes, as carefully as I could."

The evidence also shows that when, in 1878, the doctor removed from Iuka to St. Louis, defendant was not quite 13 years of age; and it is hardly probable that a child of such an age could carry in his mind from 1878 until 1886 a formula secret in its character, and composed of quite a number of ingredients,—which must be carefully compounded, as to quantity and quality of each ingredient,—with sufficient certainty, without any memorandum thereof. Besides, in his testimony he gives a different version of how he acquired the secret formula. In his deposition he says that in 1883 his mother, his sister, and himself were together, when his mother inquired of his sister if she knew how to make liver medicine. Sister replied, "No," that she never expected to make any liver medicine. His mother's reply was that "We cannot tell what may happen." His sister and defendant took down the formula dictated by the mother, and at the trial he handed to the court what purports to be this formula, as preserved by him. This information he obtained four years after the sale of the secret recipe, and the exclusive right to make the medicine had been sold by Dr. M. A. Simmons to Simmons & Hayden, whose

successors in right and title complainants now are. There can be no question that no court of equity would permit a person, after he had sold the absolute and exclusive property in a patent medicine for a valuable consideration, to impart the formula and secret recipe, which are the most valuable parts of the purchase, to others, that they may be used in competition with his vendee. Whatever knowledge Mrs. Simmons possessed, she acquired as wife of Dr. M. A. Simmons; and she could not do what her husband would be restrained from doing, and especially if, as in this case, nearly the entire consideration was paid to her as voluntary alimony. To permit this would enable every owner of a patent medicine to sell the secret thereof to one person, and have his wife, or some other member of the family to whom it had theretofore been confided, either use it, or sell it to others to be used, in competition with the purchaser. "Equity prevails against the party who gets the secret of another delivered to him in breach of contract or of trust." Green v. Folgham, 1 Sim. & S. 398. These findings clearly entitle plaintiffs to an injunction on that branch of the bill.

The complainants also complain of the ungenerous and unfair competition, by reason of a large number of things, in the dressing of the packages containing the medicines, and especially by reason of the bust picture and autograph signature thereon, and placing of some of the same words used on complainants' packages in the same relative positions on defendant's packages; an almost literal copy of directions for using the medicine, and the diseases for which it is intended; and sending out circulars in which he announces "that being the son of Dr. M. A. Simmons, of Iuka, Mississippi, and having been raised in his laboratory, naturally drifts to the medicine business," etc. The general rule applicable to this class of cases is too well settled to require the citation of many authorities. A great many of the authorities relied upon by counsel for one side are also cited in the brief of counsel for the other side. The rule may be epitomized by the following citation from one of the latest decisions of the supreme court of the United States:

"There can be no question of the soundness of the proposition that, irrespective of the technical trade-mark, the defendants have no right to dress their goods up in such manner as to deceive an intending purchaser, and lead him to believe he is buying those of the plaintiff. Rival manufacturers may lawfully compete for the patronage of the public in the quality and price of their goods, in the beauty and tastefulness of their inclosing packages, in the extent of their advertising, and in the employment of agents; but they have no right, by imitative devices, to beguile the public into buying their wares under the impression that they are buying those of their rivals." Coats v. Thread Co., 149 U. S. 566, 13 Sup. Ct. 966.

And, while it is true that the likelihood of deception must be of a nature to deceive an ordinary purchaser exercising ordinary care, regard must be had to the class of persons who purchase a particular article for consumption, and the circumstances ordinarily attending their purchase. "In determining whether packages are so dressed as to be calculated to deceive persons, equity regards the consumer, as well as the middleman, for it is to him, more than to the jobber or wholesale purchaser, that the various indicia of the origin

appeal; and the court will not tolerate a deception devised to delude the consuming purchaser by simulating some well-known and popular style of package." N. K. Fairbank Co. v. R. W. Bell Manuf'g Co., 23 C. C. A. 554, 77 Fed. 869; Lever v. Goodwin, 36 Ch. Div. 1. In the case at bar the evidence shows: That a very large class of purchasers of these medicines, and especially in the Mississippi valley, where they are principally sold, are mostly unable to read and write. That, long before defendant commenced the manufacture of his medicine, the Simmons liver medicines were well known to the consumer,—one, known as "Simmons' Liver Regulator," prepared by Zeilin & Co., distinguished by a large letter "Z" printed in red ink conspicuously on each package; and the other, "Simmons' Liver Medicine," prepared by complainants, having a bust picture, and the autograph signature of M. A. Simmons beneath it. Those desiring to purchase the Zeilin preparation would generally call for the packages with the red letter "Z," and those desiring complainants' medicine would ask for that with a picture. There can be no doubt, from the testimony, that dealers had no trouble to substitute and sell defendant's medicine when that of complainant was called for. And one of defendant's chief witnesses testified that when a negro would call for "Simmons' Tea," as a great many of them called it, he would give him Simmons' Stomach Compound (defendant's medicine), because it was a cheaper preparation; that the negroes had been calling for Simmons' medicine ever since they had been buying it, —could not state how long that was, but perhaps during the 30 years that he was in business; some of them called it tea; that the negroes buy a great deal of it; and that whenever he could, after the defendant's medicine was put on the market, upon calls for Simmons' Tea he sold them defendant's medicine. A number of other witnesses in the drug business testified to the same effect; thus showing, not only how easily frauds can be perpetrated upon the public by selling them defendant's medicine when they desire that of complainants, but that it is being actually done. From the testimony I cannot escape the conviction that it was defendant's intent to mislead the public into the belief that the medicine prepared by him was the same as that of Dr. M. A. Simmons, now complainants' property. The directions for using the medicine which accompany each package were almost literally copied by defendant from those sent out with complainants' medicine. Counsel for complainants have furnished the court with copies of these directions as sent out with complainants' and defendant's packages, placing them in parallel columns, and the court inserts them here to show the striking similarities, from which it is impossible to reach any other conclusion than that defendant copied them from those prepared and used by complainants:

| | |
|---|---|
| [Copied from the printed directions enclosing each package and bottle of M. A. Simmons' Liver Medicine, made by him and his successors, as shown by Exhibit "2" to Original Bill in this case.] | [Copied from the printed directions enclosed in each Tin Box of Defendant's Medicine, as shown by Exhibit "D" to Original Bill in this case.] |

Dr. M. A. Simmons'
Vegetable Liver Medicine

### I.

Is a certain and effectual remedy for all kinds of Liver Complaints and all diseases and indispositions that are caused from a diseased state, or inactivity of the Liver—such as chronic and acute inflammations of the Liver, Sick Headache, Dyspepsia, Sourness of the Stomach, Loss of Appetite, Lowness of Spirits, Colic, Costiveness, etc. And with other appropriate remedies it is important to prepare the system and hold it in a state of preparation for a cure of all non-febrile and chronic diseases. Use it for chronic Rheumatism and all Chronic Pains, Scrofula, Chronic Chills, Fits, Female Diseases—including all troubles during Pregnancy.

### II.

By arousing, emulging and regulating the action of the Liver, it cures its diseases—healthy bile thoroughly applied, being its natural remedy. And by that important action it assists nature in its efforts to remove all diseased conditions, and to regulate all morbid actions. The system is thus enabled to rid itself of an astonishing number and variety of the above and other non-febrile and chronic diseases, without any other medicine.

### III.

It is necessary to arouse, increase or regulate the action of the Liver, and continue the regular and healthy action during the treatment of all diseases. And as mercurials can not be safely continued for a length of time, this innocent Vegetable Liver Medicine is important at some stage in the treatment of all diseases.

### IV.

For Dyspepsia

Take a tablespoonful of the Liver Medicine soon after each meal. If that size dose (of Liver Medicine) does not operate so as to produce one copious stool every day, add to the dose until it will, and if it produces more than two, lessen the dose; but be sure to take a little every time, anyhow, if it is only a teaspoonful or a few drops. If your bowels are already too loose and irritable, begin with smaller doses, say one teaspoonful, and increase or lessen as above advised from that according to effect. And if the bowels continue so loose that the medicine seems to pass off without acting on the liver—which is very rarely the case—the patient should eat bountifully of very soft boiled eggs—the nearer raw the better—seasoned to taste with salt and black pepper. Also eat a large thimble full of prepared chalk three to five times daily. And in some diseases of the

M. A. Simmons, Jr.
Stomach Compound

### I.

Is a certain cure for all Stomach Troubles and all other diseases that are caused by irregularities of the Liver, Stomach and Bowels. If you have any of the following diseases, look for directions in such cases and take Stomach Compound accordingly, and you will be relieved at once. Sick-Headache, Dyspepsia, Indigestion, Sour Stomach, Loss of Appetite, Colic, Costiveness, Biliousness, etc., etc. And with other appropriate remedies it is necessary to prepare the system and hold it in a state for the cure of chronic diseases, such as Chronic Pains, Scrofula, Chronic Chills, Fits, Female Diseases, including all troubles during Pregnancy.

### II.

By arousing and regulating the action of the Liver, Stomach and Bowels, often cures these so-called chronic diseases without anything else.

### III.

Stomach Compound is purely vegetable and harmless, pronounced to be superior to any preparation for the Liver, Stomach and Bowels.

### IV.

For Dyspepsia

Take a tablespoonful of Stomach Compound three times daily before each meal. If that size dose does not operate so as to produce at least one free action on the bowels every day, take a little more, and if it produces more than two actions, take less, but be sure to take a little every time; if the bowels are already too loose, begin with smaller doses, say one teaspoonful, and increase or lessen as above advised, from that according to effect. And if the bowels continue so loose that the medicine seems to pass off without acting on the Liver, the patient should eat half a teaspoonful of prepared chalk three or four times daily, and eat heartily of very soft boiled eggs, with salt and pepper to taste, which will have a tendency to bind the bowels. In some very stubborn cases, may have to use an injection of one tablespoonful of common starch, with about 20 drops of laudanum

lower bowels it is necessary to take an injection of starch and laudanum occasionally, until the Liver Medicine can get to the liver and regulate the peristaltic action of the whole canal. One tablespoonful of common starch, as for clothes, with thirty to sixty drops of laudanum, according to age and emergency. Or one-fourth of a grain of morphine dissolved in an ear syringe full of cold water—repeat if necessary. Any deranged condition of the bowels may be regulated at pleasure with this Liver Medicine used as directed.

## V.

### For Piles.

Keep up the regular and healthy condition of the Liver, Stomach and Bowels with the Liver Medicine, and all symptoms of piles will soon disappear.

## VI.

### For Costiveness,

And the digestion yet good and the blood healthy, take the Liver Medicine every night in a sufficient quantity (beginning with a tablespoonful to produce one copious stool every day), but if the digestive organs are in the least weakened, or if you think your blood is not healthy, use the Medicine as directed in case of Dyspepsia. If there is a pain in the right side, in the shoulders or back of the neck, and digestion yet good, the Liver Medicine must be taken three times a day, in quantities sufficient to produce two or three stools a day.

## VII.

### Pregnant Women

Should take the Liver Medicine every night in a sufficient quantity to produce one stool every day, beginning with a tablespoonful and add or diminish as the case may require—in this way they are relieved of restless feelings at night, heartburn, etc.

## VIII.

### For Cramp Colic

Take a gill of Liver Medicine when the attack is on; repeat if necessary in a few minutes, and you will be well before you know it.

## IX.

### Best Tonic.

It is believed that this is the very best General Tonic, and the only medicine that will restore the Liver to regular and healthy action and cure its diseases. By keeping the Liver, Stomach and Bowels in this perfect healthy condition with the Liver Medicine, many other diseases would get well without any specific direction of remedies to them.

to a pint of water, only until the bowels are checked enough so that the stomach will retain the Stomach Compound long enough to take hold of the liver, and then the bowels may be regulated at pleasure with the Stomach Compound.

## V.

### For Piles.

Keep the Liver, Stomach and Bowels in a regular, healthy condition by the use of Stomach Compound, and all symptoms of Piles will soon disappear.

## VI.

### For Costiveness,

And the digestion being good and the blood in good fix, take Stomach Compound every night in doses large enough to produce one good free action every day. Commence with, say a tablespoonful, but if your digestion is not good, and your blood out of fix, use the medicine as in Dyspepsia. If there is in your back or right side, under shoulder or back of neck, any pain, and your digestion good, you must take Stomach Compound in sufficient quantity to produce two or three good free actions.

## VII.

### Pregnant Women

Are often troubled with Heartburn, Restlessness at Night, Smothering, or Short Breath and Costiveness. This will all be overcome by taking Stomach Compound in sufficient quantity to produce one good free action on the bowels daily, beginning with a tablespoonful, and add or diminish as may be required.

## VIII.

### For Cramp Colic.

Take three tablespoonfuls when the attack is on; repeat if necessary in a few minutes. You will be relieved at once.

## IX.

### The Best Tonic.

Stomach Compound is the best Tonic on earth. When your Liver, Stomach and Bowels are active and right, you are right, and you need nothing but Stomach Compound to keep you right

## X.

### In all cases of Liver Complaints

Not prescribed for in this bill, use the medicine as directed for Dyspepsia.

### XI.

N. B.—All the above named doses are for grown persons, and may be lessened for children according to their ages. Give the liver medicine to children for Colic or Costiveness as soon as they are born, and always afterwards, whenever they need it.

### XII.

#### Use the Powder in Substance.

In cases of Fever and Diseases which cause Fever—use the medicine in substance in place of making tea from it as above. For children it should be stirred in a little cold coffee or milk, for fear they suck it into their lungs if put in their mouth dry.

### XIII.

#### Test Your Whisky.

A little ball of raw cotton rolled in your fingers will sink in any whisky that will save medicine. If the cotton floats, the whisky is too weak.

### XIV.

#### For Enlargement of the Spleen, Chronic Chills,

While convalescing from any acute disease, for General Debility and all other diseases in which a natural Tonic is indicated, use the Liver Medicine, as in case of Dyspepsia.

### XV.

#### To Prepare this Medicine in Powder for Use.

Pour half pint of boiling water upon the contents of one of the little packages—cover it closely—infuse twelve hours—strain through coarse linen, flax, linsey or flannel, and add half as much good whisky as the tea measures. To make up two of the little packages at once, use one pint of boiling water. To make it strong—The vessel should be as near the right size to hold the powders with the amount of water, as possible. Cover it closely to keep all the steam in the vessel.

## X.

### In all Cases of Liver Complaint

Not mentioned in this, use Stomach Compound as in Dyspepsia.

### XI.

#### For Children.

Keep the bowels open with 'Stomach Compound, and give it to them when first born for Costiveness and Colic, and always after when they need it.

### XII.

#### Use the Powder.

In cases of Fever and diseases which cause fever, use the Powder, instead of making a tea of it. For children, it should be stirred in a little milk or cold coffee, for fear they suck the powder into their lungs if put into their mouths dry.

### XIII.

#### Test Your Whisky.

A little ball of raw cotton, rolled in your fingers, will sink in any whisky that will save medicine. If the cotton floats, the whisky is too weak.

### XIV.

#### For Enlargement of the Spleen.

While convalescing from any acute disease, for General Debility, and all other diseases in which you need a natural tonic, use Stomach Compound as in Dyspepsia.

### XV.

#### To Make Liquid.

Pour one-half pint of boiling water upon the contents of one of the tin boxes, cover it closely, let it stand 10 hours, strain through a piece of coarse muslin or flannel, and add half as much good whisky as the tea measures, then ready for use. Notice—It is better to have an earthen vessel to make it in, and as near the right size for the amount of tea you wish to make, as possible, as you can keep all the steam in and by so doing, get the strength from the medicine.

. If you wish to make up more than one box at a time, you can do so by following these directions.

In sending out card circulars containing the following:

"Having been raised in the drug store and laboratory of my father, Dr. M. A. Simmons, of Iuka, Miss., know more of that business, am in it, and this card is to ask every family to try my Stomach Compound (a purely vegetable preparation) for the stomach and bowels. It will keep these most important organs in healthy condition, and cure all diseases and bad feelings that are caused from indigestion, or want of action of the liver, stomach, and bowels, such as dyspepsia, sour stomach, biliousness, costiveness, enlargement of the spleen,

colic, dry gripes, general debility, sick headache, and all other troubles in all parts of the system that are caused by the liver, stomach, and bowels not being in healthy condition,"

—Defendant undoubtedly intended to convey the impression that his medicines are the same as those known as M. A. Simmons' of Iuka, Miss. The testimony is so voluminous on that point, and the similarities so numerous, that to state them all in this opinion would be impracticable. But after having carefully examined them, and aided by the arguments of counsel for both sides, I have no hesitancy in finding that the facts clearly establish that the medicines of defendant constituted an unfair and ungenerous competition; that they were so dressed by him with the intent to deceive the public, and lead at least the ignorant class of the purchasers, who constituted the largest percentage of them in the localities in which defendant compounds and sells his medicines almost exclusively, to believe that they were purchasing complainants' medicines, which have been established for over 50 years, and have become well and favorably known to the public. Courts of equity must prevent such injustice, when appealed to. Complainants acted promptly in this matter. As soon as they learned of the manufacture and sale of defendant's compound, they instituted this action. Let there be a decree for complainants in conformity with the views herein expressed.